People v Hopkins (2025 NY Slip Op 50791(U))

[*1]

People v Hopkins

2025 NY Slip Op 50791(U)

Decided on May 16, 2025

Criminal Court Of The City Of New York, Bronx County

Wolf, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 16, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Anajah Hopkins, Defendant.

Docket No. CR-009839-24BX

For the People: Darcel D. Clark, Assistant District Attorney, Bronx County (by Ashley L. Akl) 
For Anajah Hopkins: The Legal Aid Society (Dajehne Nisbett)

Ralph L. Wolf, J.

Summary 
Defense motion seeking dismissal of the information on statutory speedy trial grounds is GRANTED.
PROCEDURAL HISTORY
Anajah Hopkins was arrested on April 28, 2024, charged with assault in the third degree and related charges, and issued a desk appearance ticket. She was arraigned in Part AR2 on May 18, 2024, released on her own recognizance, and the case was adjourned to July 17, 2024 for the prosecution to file a supporting deposition, Statement of Readiness (SOR), and Certificate of Compliance (COC). 
On June 5, 2024 the prosecution filed an off-calendar supporting deposition, the complaint was deemed an information at the July 17, 2024 calendar call, and the case was adjourned to August 28, again for compliance. On July 26, 2024 the prosecution filed off-calendar their initial and supplemental COCs and SOR. In each of the COCs filed that day the prosecution indicated that the New York City Police Department (NYPD) Complaint Report Worksheet - Scratch and NYPD Aided Card did not exist, with the caveat, "[t]he People have requested said materials from NYPD thirteen times and will disclose materials if they exist and when they are received." At the August 28, 2024, calendar call the parties were ordered to [*2]confer, to apprise the court of any outstanding discovery issues prior to the next adjourned date, and the case was adjourned to October 22, 2024 for a discovery/COC conference. At the October 22, 2024, calendar call the defense agreed to waive 30.30 time and the case was adjourned to December 3, 2024 for possible disposition. 
On November 1, 2024 the prosecution filed a supplemental COC indicating that they had turned over to the defense the NYPD Complaint Report Worksheet - Scratch and NYPD Aided Card, as well as three surveillance videos they were able to obtain from the complaining witness. The prosecution explained that they met with the arresting officer on October 28, 2024 and he provided them with the NYPD Complaint Report Worksheet — Scratch and Aided Card that day. The prosecution did not explain why the previously filed COCs stated that this material was unavailable or non-existent. They further explained that the complaining witness, a general manager at the Chuck E Cheese where the incident took place, was able to provide videos, that the arresting officer told the prosecution were no longer available. 
On December 3, 2024 the parties were not ready to proceed with a COC conference and the case was adjourned to December 17, 2025 for the conference. On a second call at the December 17, 2024, calendar call the prosecution stated on the record: 
"It's the People's information we did send to the precinct for the complaint scratch on [sic] at least three days prior to certifying the COC, and it appears here we just inadvertently failed to disclose the document. I do believe it was just overlooked in my emails. The document, however, was listed as being unavailable on the face of my COC and also on all of the subsequent supplementals that I did file. That just indicates that the People merely overlooked the document. If that was not the case, we would have just not even mentioned the document anywhere at all. But again, information is de minimis to this case. It's duplicative of stuff that's already contained in the arrest paperwork and complaint report and within numerous places throughout the discovery that was shared. And that's the People's due diligence here."
(December 17, 2024 tr at 9, lines 9-23).
LEGAL ANALYSIS
The prosecution argues that the defense objections are waived because they were raised late. This court finds the prosecution's argument specious. Contrary to the prosecution's assertion, the record in this case shows that the parties were discussing both a possible disposition and contested discovery issues between August and December, 2024 when the instant motion's schedule was set. The latter discussions were fruitful as items of discovery were turned over, even as late as December 11, 2024. On this record, the court cannot find that the defense waived its objections. 
The defense argues that several items of discovery were turned over late and numerous items of discovery remain outstanding. This decision rests on an analysis of three of the discovery items turned over late: (1) the NYPD Complaint Report Worksheet — Scratch; (2) the NYPD Aided Card; and (3) the Chuck E Cheese surveillance videos. While not addressing the [*3]remainder of the discovery issues, this decision should not be construed as having decided those issues. 
The Court of Appeals seminal discovery case People v. Bay, 41 NY2d 200 (2023) provides guidance for evaluating the facts in the instant matter. 
"Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, [1] the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, [2] the volume of discovery provided and outstanding, [3] the complexity of the case, [4] how obvious any missing material would likely have been to a prosecutor exercising due diligence, [5] the explanation for any discovery lapse, and [6] the People's response when apprised of any missing discovery." 
People v. McMahon, 230 NYS3d 706 (2nd Dept. Apr. 2, 2025), citing Bay, Supra. Each factor will be addressed in turn. 
The Bay Factors Efforts made by the prosecution and the prosecutor's office to comply

 with the statutory requirements

In neither Bay, nor the instant case did the prosecution seek additional time for filing a proper COC. The Bay Court highlighted this error when it held: 
We note that speedy trial dismissals based on disclosure violations are not inevitable. In addition to exercising due diligence to ensure COCs are not later deemed improper, the People can request additional time for discovery upon a showing of good cause, seek an individualized finding of special circumstances to be deemed ready despite the failure to file a proper certificate, or try to exclude from the speedy trial calculus periods of delay occasioned by exceptional circumstances.
Bay, at 215 (internal quotation marks and citations omitted). 
Here the prosecution filed its COC and SOR before speaking to its witnesses about discovery issues and admits that they only met with the arresting officer and the complaining witness after learning there would be no disposition in this case (affirmation in opposition at 12). This is unreasonable and does not demonstrate due diligence, and there is a question as to whether the prosecution was actually ready for trial when it filed its SOR, or at any time before speaking with its witnesses. "The statute contemplates an indication of present readiness, not a prediction or expectation of future readiness" People v. Kendzia, 64 NY2d 331 at 337 (1985). Being ready for trial for either party, at the very least, requires speaking to potential witnesses [*4]and reviewing discovery. In this case that clearly did not happen within the time allotted under CPL § 30.30. "A statement of readiness at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock" People v. England, 84 NY2d 1 (1994). "[R]eadiness is not defined simply by an empty declaration that the People are prepared to present their direct case." Id. at 4.
The prosecution argues that it was difficult to access these key pieces of discovery, then admits to the simple solution it used to obtain and disclose the missing discovery: it spoke to its witnesses. The prosecution, in their opposition, stated numerous times that they requested discovery "from NYPD thirteen (13) times" via email, and asks the court to find that is proof of due diligence. The number of times the prosecution tried the same process with the same result does not indicate due diligence. It wasn't until they tried the reasonable, logical step of talking to their own witnesses that they were able to obtain and share the missing discovery. The court cannot find due diligence in these circumstances.

Volume of discovery provided and outstanding
While the prosecution has turned over a substantial amount of discovery, that does not relieve them of the duty to act diligently and make reasonable efforts to obtain and disclose routine, necessary discovery. As outlined below the NYPD documents are disclosed in virtually every assault case, and the prosecutor was aware there had been video related to the incident. 

 Complexity of the case
There is nothing complex or out of the ordinary in this case, that would make discovery compliance particularly difficult. While the defense has alleged that there is other discovery that is missing, the court finds no need to itemize all of the potentially missing discovery. 

How obvious any missing material would likely have been
  to a prosecutor exercising due diligence
In Bay the prosecution twice failed to demonstrate due diligence in providing the defense with what the Court described as routinely produced disclosure materials — a 911 call and a police report. Bay at 215. Similarly, here, the prosecution failed to disclose routinely produced disclosure materials — the NYPD Complaint Report Worksheet — Scratch and, the NYPD Aided Card.[FN1]
Additionally, the prosecution failed to disclose three surveillance videos they were able to obtain from the complainant. Allegations here are that this occurred inside of a Chuck E Cheese restaurant and the complaining witness is a general manager there. Most commercial establishments in New York City are likely to have video surveillance. As Chuck E Cheese is an [*5]international chain restaurant, surveillance video of the incident was likely available. Thus, these items then would properly be categorized as routinely produced disclosure materials. Discussing these issues with the prosecution's witnesses would have produced results much sooner than continuing to send emails to the NYPD.

Explanation for any discovery lapse
Similar to the prosecution in Bay, the prosecution here claimed the missing discovery did not exist. It is not completely clear if the prosecution received the NYPD Complaint Worksheet — Scratch before filing the initial COC in July 2024, or if it was received when they met with the arresting officer in person in October 2024 
The prosecution provided several explanations for their lapse, none of which support a finding of due diligence. In their COC the prosecution stated that the discovery did not exist or they did not have it, and that they had requested the discovery thirteen times, but did not receive it. At the calendar call on December 17, 2024 the prosecution also indicated that they had some of the discovery before certifying compliance, but forgot to turn it over: "we just inadvertently failed to disclose the document," and "the People merely overlooked the document." (December 17, 2024, Tr pg 9). This is not persuasive as this went on for months and the prosecution made certifications on multiple COCs that were misleading. Like the prosecution in Bay, the prosecution argues that the failure to share the discovery was "inadvertent." However, like the Court in Bay, this court is "unpersuaded by these contentions" at 211. The prosecution is asking this court to find they exercised due diligence when they stated that the discovery was "unavailable or nonexistent" and they either overlooked a document they had for several months, or failed to request the document sooner from the arresting officer when their thirteen email requests for discovery were unproductive. This court does not see evidence of due diligence on these facts. The prosecution's repeated statements that they had requested documents from the NYPD without response does not evince due diligence and reasonable effort, but rather demonstrates a commitment to an ineffective pattern. When the prosecution finally made the reasonable effort of meeting with and speaking to their arresting officer, they had same-day success. 
Similarly, the prosecution was aware there had been video related to the incident, but only had a distorted copy. They also knew the complaining witness was a general manager at the location. And, again, once they spoke to their witness, they were able to obtain a better copy of the video along with additional videos. There was no evidence that the prosecution made efforts to obtain video from the location, and the one call with the arresting officer about whether video was still available, does not demonstrate due diligence. 
The prosecution did not seek to modify discovery periods for "good cause", they did not seek a protective order to withhold any discovery, and they did not establish "special circumstances" to justify stating ready upon an improper COC. See Bay supra. 

Prosecution's response when apprised of any missing discovery
In Bay, the prosecution stated that the missing discovery did not exist. The prosecution [*6]here indicated in at least two of the COCs they filed that the missing NYPD documents were "unavailable or non-existent," and argued that they were unaware of the existence of the videos provided by their complaining witness. In Bay, it turned out the prosecution did have the missing discovery and was able to turn it over within a day when defense counsel inquired of a different prosecutor in the same office. Here, the prosecution indicated in the November 1, 2024 supplemental COC that when they met with the arresting officer, they were provided with the NYPD documents the same day. The prosecution was aware that there had been surveillance video of the incident, but believed, after one conversation with the arresting officer, that it was no longer available. It turned over one "poor quality" video initially. Some months after the filing of the initial COC, the prosecution learned that the complaining witness had access to surveillance video of the incident, and were able to obtain and disclose copies. As the complaining witness was a general manager at Chuck E Cheese, it would have been reasonable to ask the complaining witness about the videos sooner, and failure to do so shows a lack of due diligence. 
The prosecution in Bay eventually turned over the requested discovery as the prosecution here did. The Bay Court held, "[a]lthough belated disclosure will not necessarily establish a lack of due diligence or render an initial COC improper, post-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed" at 212. There the Court found that although some of the discovery was eventually disclosed, the prosecution failed to demonstrate that they exercised due diligence and made reasonable inquiries prior to filing the COC. See Bay, at 211. 
The lower court in Bay, found that there was no prejudice resulting from the late discovery disclosure. The prosecution here argues that the defense fails to show it suffered prejudice. The Court in Bay, "stated, speedy trial dismissal pursuant to CPL § 30.30 is not contingent on a finding of prejudice" at 214 (internal citations omitted). 
The prosecution in Bay, argued that the remedy must satisfy CPL § 245.80 and that dismissal is only appropriate upon showing of proportionate prejudice. The prosecution here argues that dismissal is not the default remedy. The Bay Court held that this is a "misunderstand[ing of] the statutory scheme. As explained, CPL § 30.30 now requires dismissal if the People did not file a proper COC and the speedy trial time has run." Id. 
The prosecution argues that the information contained in the NYPD report is "di minimis" as the information is contained in other discovery. 
"It is the People's position that the Complaint Report Scratch sheet is merely a supplemental document that contains duplicative information already provided to defense counsel in the Arrest Report and Complaint Report, both of which were shared with initial discovery on July 26, 2024.
(Affirmation in opposition at 11). This is not for the prosecution to decide. "It is not the People's decision to look at two entirely different police reports and decide that they believe one contains information 'duplicative' of the other and so will not be disclosed." People v Ajunwa, 75 Misc 3d 1220(A) (Crim Ct, Bronx County 2022). 

[*7]Conclusion
Because the prosecution cannot establish that they exercised due diligence prior to filing the initial COC and first two supplemental COCs, the COCs were improper, and the statement of readiness was illusory. In the absence of a valid readiness statement tolling the speedy trial clock, the prosecution is charged with all the time between Ms. Hopkins' arraignment and October 22, 2024 when the defense agreed to waive CPL § 30.30 time, a total of 156 days. Therefore, the prosecution has exceeded the applicable 90-day period under CPL 30.30 (1) when Ms. Hopkins moved for dismissal. Thus, Ms. Hopkins' motion is granted. 
The foregoing constitutes the order and decision of the court. 
Dated: May 16, 2025
Bronx, NY
Ralph L. Wolf, J.C.C.

Footnotes

Footnote 1:The NYPD Complaint Report Worksheet — Scratch is a written report prepared by the arresting officer in every arrest, compiling information related to the arrest. The NYPD Aided Card is prepared in every case where there are allegations, as there are in the complaint in this case, of injuries to an alleged victim.